UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
-------------------------------x
MATTHEW C. CALDERON,            :
        Petitioner,             :
                                :
                                :
                                :
v.                              :    Civil No. 3:25-cv-00549 (AWT)
                                :
                                :
WARDEN FLOWERS,                 :
        Respondent.             :
                                :
-------------------------------x
```

## RULING ON PETITION FOR HABEAS CORPUS

Petitioner Matthew Calderon ("Calderon") is currently incarcerated at Danbury Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"). He has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a disciplinary action taken against him. See Petition ("Pet.") (ECF No. 1).

On June 26, 2025, Respondent Warden Flowers (the "Respondent") filed a response to the court's Order to Show Cause. See Respondent Warden Flower's Response to Show Cause Order (ECF No. 8). On August 14, 2025, Calderon filed an opposition. See Petitioner's Response to the Respondent's Response to the Show Cause Order (ECF No. 12) ("Pet'r Opp'n"). The respondent filed a reply on August 27, 2025. See Respondent

Warden's Reply Memorandum in Support of Response to Show Cause Order (ECF No. 13) ("Resp't Reply").

For the reasons set forth below, the Petition is being denied.

I.  **FACTUAL BACKGROUND**

Petitioner Calderon challenges on Fifth Amendment due process grounds a disciplinary determination by a Bureau of Prisons ("BOP") Discipline Hearing Officer ("DHO") that he was guilty of drug possession at FCI Danbury on July 11, 2024 (Code 113).  See Pet. at 1; Declaration of Cheryl Magnusson ("Magnusson Decl.") Ex. A, Incident Report at 1 (¶ 11) (ECF No. 8-2).

The respondent has submitted the declaration of BOP Legal Assistant Cheryl Magnusson, who has access to Calderon's disciplinary records.  See Magnusson Decl. at 1 (¶ 4) (ECF No. 8-1).  She attaches to her declaration the Incident Report charging Calderon with the disciplinary offenses of Possession of Drugs/Alcohol (Code 113) and Destroy/Dispose Item-Search (Code 115A) dated July 12, 2024; photographic evidence; the DHO Report dated August 14, 2024; and the Inmate Rights at Hearing form dated July 18, 2024.  See Magnusson Decl. Exs. A-D (ECF No. 8-2 to 8-5).

In the Incident Report, Officer Rivera provided the following account of the July 11, 2024 incident:

> On July 11, 2024, at approximately 7:45 p.m., I reported to H-A unit after the G-H unit officer called for staff to come up to the unit.  While in the H-A unit, I observed inmate Calderon, Matthew, Reg. No. 85275-509, sliding something under the heater with his right foot.  I observed a plastic bag under his foot and told him to move his foot.  At this time another officer was placing the inmate into hand restraints as I picked up the bag from the floor.  Inside the bag were 10 and [a] half orange film strips with the marking N8.  I then brought the contraband over to the Lieutenant's office.  Health Services was contacted to identify the orange strips.  As per Health Services the orange strips with the marking N8 were identified as buprenorphine and naloxone sublingual film with the brand name suboxone.  Photographs and a chain of custody form were generated.  The inmate was then escorted to the Special Housing Unit without incident.

Magnusson Decl. Ex. A, Incident Report at 1 (¶ 11). See also Magnusson Decl. Ex. B, Evid. Photo Spread at 2 (ECF No. 8-3).

Officer Rivera reported that an investigation into the incident commenced and an investigator was assigned on July 12, 2024.  Magnusson Decl. Ex. A, Incident Report at 3 (¶ 22).  The Incident Report indicates that Calderon was provided a copy of the Incident Report, was advised of his rights, and acknowledged his understanding of his rights but did not request a staff representative or any witnesses on July 12, 2024.  See id. at ¶¶ 23-24.[1]  According to the Incident Report, Calderon told prison officials that he "threw the cigarette down on the floor near the toilet" after "he heard keys"; and that he stated: "I was smoking the cigarette, my cellmate had nothing to do with it. I

---

[1] The Incident Report shows a delivery date and time of July 12, 2024 at "1908 hrs".  Id. at 1 (¶¶ 14-16).

don't know nothing about the suboxone." Id. at 2 (¶ 17), 3 (¶ 24).

A Disciplinary Hearing was held by video on July 23, 2024. See Magnusson Decl. Ex. C, DHO Report at 1 (§ I (¶ B)), 2 (§ V) (ECF No. 8-4). Calderon signed a form affirming that he was advised of the rights afforded to him at the hearing. See Magnusson Decl. Ex. D, Inmate Rights at Discipline Hearing (ECF No. 8-5).

The DHO Report reflects that Calderon denied the charges; waived his right to call witnesses or have a staff representative at the hearing; and made the following statement: "I only had a cigarette. The suboxone wasn't mine. I never slid anything under the heater." Magnusson Decl. Ex. C, DHO Report at 1 (§ III (¶ B)), 2 (§ III (¶ C)).

In addition to the Incident Report, the DHO considered the following documentary evidence: medical memoranda, photographs, chain of custody documents, staff memoranda, the Inmate Rights at Discipline Hearing form, the Notice of Discipline Hearing Before the (DHO), and prison video footage. See id. at 2 (§ III (¶ D)).

After reviewing the evidentiary record, including Calderon's statement, the DHO dismissed the Code 115A violation but determined that Calderon's claim that he merely possessed a

-4-

cigarette lacked merit and found him responsible for possession of the suboxone. See id. at 2 (§ IV); 3 (§ V).

As a result of the finding of guilt, the DHO imposed sanctions of sixty days in disciplinary segregation and loss of forty-one good conduct time days and six months of commissary privileges and visits. See Pet. at 1; Magnusson Decl. Ex. C, DHO Report at 3 (§ VI).

Calderon filed the instant petition for habeas corpus under 28 U.S.C. § 2241, asking the court to vacate the Incident Report and lift the sanctions. See Pet. at 2.

**II.  LEGAL STANDARD**

Section 2241 affords relief only if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). An inmate who seeks relief under section 2241 "generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)

(citing Chambers v. United States, 106 F.3d 472, 474-75 (2d Cir. 1997). Thus, a petition filed pursuant to § 2241 is appropriately used to expunge disciplinary sanctions, including the loss of good time credits, from a prisoner's record. See Carmona, 243 F.3d a 632.

## III. DISCUSSION

The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556-57 (1974) (noting that prisoner's good time credits created under state law gave rise to liberty interest). But "it has long been clear that inmates retain due process rights in prison disciplinary proceedings." Hanrahan v. Doling, 331 F.3d 93, 97 (2d Cir. 2003). Thus, to comport with procedural due process, an inmate charged with a violation in a disciplinary hearing must be given: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Superintendent v.

Hill, 472 U.S. 445, 453-454 (1985) (referring to holding in Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." Superintendent, 472 U.S. at 455. This is because a "requirement of 'some evidence' . . . would help to prevent 'arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.'" Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004) (quoting Superintendent, 472 U.S. at 455). A court's determination of whether the "some evidence" standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Luna, 356 F.3d at 488. Rather, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. (emphasis, internal quotation marks, and citation omitted). "Although the Court in Hill stated that the question is whether there is 'any evidence' that 'could' support the disciplinary decision, [the Second Circuit] has not construed the phrase 'any evidence' literally." Luna, 356 F.3d at 488. Instead, it "ha[s] looked to see whether there was 'reliable evidence' of the inmate's guilt." Id. "Due process does not permit a hearing officer simply to ratify the bald conclusions

of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." Elder v. McCarthy, 967 F.3d 113, 129-30 (2d Cir. 2020) (internal quotation marks and citation omitted).

Calderon does not claim that he was not afforded the procedural protections of advance written notice; an opportunity to call witnesses and present documentary evidence in his defense with a staff representative; or a written statement by the DHO setting forth the evidence relied on and the reasons for the disciplinary action.

Rather, Calderon's sole challenge is that there was insufficient evidence to warrant the DHO's finding of guilt and the sanctions for a Code 113 violation (possession of Drugs/Alcohol). Calderon claims that his rights were violated because the DHO's determination that he possessed contraband and violated Code 113 was "based on unreliable and implausible hearsay". Pet. at 2. Specifically, Calderon asserts:

> I was smoking a cigarette in the bathroom when two officers approached me. Officer Rapokowski took me out [of] the bathroom, handcuffed me, and moved me to the hallway. All while under direct supervision of numerous staff members, the reporting officer alleges I somehow was taken to the exact spot of the drugs, attempted to conceal the drugs, and no one else saw. That contention is absurd. The DHO, upon reviewing the footage, didn't see me kicking contraband as alleged. The DHO stated it was my "responsibility to not come into contact with contraband." However, I was being directed by staff members. They are trying to attribute contraband found in a common area that staff escorted me to. I obviously couldn't reach into my

>   pocket or concealed area while restrained and being
>   escorted by staff.  To allege it was mine was based on
>   unreliable and implausible hearsay is a violation of my
>   rights.

Pet. at 1-2.  Calderon maintains further that "Officer Rivera's report . . . stated that the contraband was found under a heater in the bathroom" and that "he came up the stairs after [Calderon] left the bathroom."  Pet. at 2.  He argues that "[i]t would be impossible for [Officer Rivera] to observe [him] kicking something under a heater in a place that doesn't have a heater especially considering [Officer Rivera] wasn't present while [Calderon] was in the bathroom."  Id.

Calderon claims that a "separate informational report" (also authored by Officer Rivera) states "the suboxone was found under a heater near Office[r] Murray's office and not found in the bathroom."  Pet'r Opp'n at 1.  He posits that this other "informational report contradicts" the Incident Report relied upon by the DHO.  Id.  Calderon states that he was not able to present the other report at the DHO hearing and that the court should order the respondent to produce the "exculpatory report" for its review.  Id. at 3, 5.

A prisoner's due process rights are violated "when he is punished solely on the basis of a victim's hearsay accusation without any indication in the record as to why the victim should be credited", Luna, 356 F.3d at 490, but that is not the

situation here.[2]  The record with respect to Calderon's disciplinary proceeding demonstrates that reliable evidence supports the DHO's determination.

The DHO Report clearly set forth how the DHO assessed the evidence, including the Incident Report, Calderon's statement, video footage, and photographic evidence.  See Magnusson Decl. Ex C, DHO Report at 3 (§ V).

Contrary to Calderon's assertion, Officer Rivera did not state that the contraband was found in the bathroom or that he observed Calderon kicking something under a heater in the bathroom.  See Magnusson Decl. Ex. A, Incident Report at 1 (¶ 11).  As the DHO Report explained:

> To support this finding [upholding the Code 113], the DHO relied upon staff member [Officer] Rivera's written account of the incident paraphrased as follows: On July 11, 2024, at approximately 7:45 p.m., [Officer Rivera] reported to H-A unit after the G-H unit officer called for staff to come up to the unit.  While in the H-A unit, [Officer Rivera] observed inmate Calderon, Matthew, Reg. No. 85275-509, sliding something under the heater with his right foot.  [Officer Rivera] observed a plastic bag under [inmate Calderon's] foot and told him to move his foot.  At this time another officer was placing the inmate into hand restraints as [Officer Rivera] picked up the bag from the floor.

Magnusson Decl. Ex. C, DHO Report at 3 (§ V).

---

[2] Courts within this Circuit hold that hearsay evidence is admissible in prison disciplinary proceedings.  See Chavez v. Gutwein, No. 20-CV-342 (KMK), 2021 WL 4248917, at *13 (S.D.N.Y. Sept. 17, 2021) (citing cases).

The DHO Report states: "In addition to the previous written account of the incident, the DHO considered your statement during the DHO hearing in which you stated the following: I only had a cigarette. The suboxone wasn't mine. I never slid anything under the heater." Id.  The DHO observed that the video evidence did not "capture the incident due to the angle and placement of the camera" but concluded that the photographic evidence and supporting documentation "show[ed] the contraband was properly identified and properly handled." Id.  The DHO found that "there was no evidence presented which would corroborate [Calderon's] statement" at the hearing that the suboxone was not his and that he never slid anything under the heater. Id.; see id. at 1 (§ III (¶ B)).  The DHO concluded that

> regardless of if the suboxone was yours or not, you were found in possession of it when you were observed kicking what was later identified as suboxone.  The DHO finds it is your responsibility to not come into contact with contraband.  The DHO gave greater weight to the reporting staff member's statements; specifically, that you were in possession of suboxone when you were observed by him sliding it under the heater with your right foot.  Thus, the DHO determined your claim of not sliding anything under the heater with your foot and only having a cigarette was without merit.
>
> Therefore, based on the greater weight of evidence, the DHO determined you did not present sufficient evidence to refute the charge.  Consequently, the DHO finds you committed prohibited act 113 POSSESSING DRUGS/ALCOHOL.

Id. at 3 (§ V).

The DHO identifies the penological interest justifying the imposed sanctions. See id. at 3 (§ VII). The DHO observed that an inmate's use or possession of drugs or alcohol threatens the inmate's health and safety and that of "all other inmates and staff." Id. The DHO then noted that "evidence has shown when inmates are under the influence of drugs, narcotics or alcohol, they have become violent towards other inmates, as well as staff, causing injuries as well as deaths, which cannot and will not be tolerated from any inmate." Id. The DHO explained that "[t]he sanctions imposed by the DHO were taken to let the inmate know that he/she, and he/she alone, will be held responsible for his/her actions/behaviors at all times." Id.

Thus, the DHO complied with due process by examining the evidence to determine "whether the totality of facts and circumstances reasonably supports the proffered conclusion" with respect to Calderon committing a Code 113 violation. Elder, 967 F.3d at 129-30 (internal quotation marks and citation omitted). See Munteanu v. Lowe, No. 19-CV-3313 (DC), 2023 WL 4564878, at *4 (E.D.N.Y. July 17, 2023) ("it can be reasonably expected, in the absence of other evidence, that an inmate will monitor his personal living space to keep it free from contraband.") (internal quotation marks and citations omitted).

To the extent Calderon faults the DHO for placing greater weight on Officer Rivera's statement, he is challenging the

DHO's weighing the evidence. "It is not the province of this Court, given the limited standard of review, to weigh the evidence presented to the DHO." Mendez v. Bell, No. 3:16-CV-02123 (JAM), 2018 WL 4039321, at *3 (D. Conn. Aug. 23, 2018) (citing Hill, 472 U.S. at 455); See also Stroud v. Stover, No. 3:23-CV-1687 (SVN), 2024 WL 4513070, at *9 (D. Conn. Oct. 17, 2024) ("Consistent with the limited and deferential standard of judicial review of the disciplinary determination, the Court does not question the DHO's credibility assessment or weighing of the evidence presented."); Chavez v. Gutwein, No. 20-CV-342 (KMK), 2021 WL 4248917, at *12 (S.D.N.Y. Sept. 17, 2021) ("[I]t is well-established that a correction officer's misbehavior report may constitute reliable evidence of guilt").

Nor does Calderon's contention that there is "a separate informational report that contradicts" the Incident Report change the court's analysis. Pet'r Opp'n at 1. The DHO Report reflects that Calderon did not "request witnesses" or "present written documentation as evidence" at his hearing. Magnusson Decl. Ex. C, DHO Report at 2 (§ V); see id. (§ III (¶ C)). The court will not consider new evidence to review the merits of a DHO decision that is supported by the reliable evidence because "the relevant question" for a district court reviewing a prison disciplinary decision is whether there is reliable evidence in the record that could support the conclusion reached by the

-13-

disciplinary reviewer.  Koustas v. Williams, No. 3:18-CV-869 (VLB), 2018 WL 10498449, at *2-*3 (D. Conn. Oct. 15, 2018) (declining to consider new evidence when reviewing section 2241 petition where "petitioner did not present any documentary evidence at the hearing"); Zarzar, v. Pullen, No. 3:23-CV-28 (MPS), 2023 WL 7220752, at *4 (D. Conn. Nov. 2, 2023) (denying section 2241 petition where DHO's decision was sufficiently supported by reliable evidence, even though the petitioner retracted his confession after the disciplinary hearing claiming it was coerced).

Moreover, the claimed other "informational report" stating that "the suboxone was . . . not found in the bathroom", see Pet'r Opp'n at 1, does not contradict the Incident Report considered by the DHO.  As previously noted, neither the Incident Report nor the DHO Report refer to Officer Rivera finding the suboxone in the bathroom.  See Magnusson Decl. Ex. A, Incident Report at 1 (¶ 11); Magnusson Decl. Ex. C, DHO Report at 3 (¶ V).

Based on the foregoing, the court concludes that the record underlying the DHO's determination of Calderon's Code 113 violation and the sanctions show that Calderon received due process in connection with his disciplinary proceeding.

## IV. CONCLUSION

For the foregoing reasons, the Petition under 28 U.S.C. § 2241 (ECF No. 1) is hereby DENIED.[3]

The Clerk shall close this case.

It is so ordered.

Dated at Hartford, Connecticut this 7th day of November, 2025.

                                              /s/AWT
                                        Alvin W. Thompson
                                  United States District Judge

---

[3] "Because this habeas petition was brought under 28 U.S.C. § 2241, the [certificate of appealability] requirement of 28 U.S.C. § 2253 does not apply." <u>Thom v. Ashcroft</u>, 369 F.3d 158, n.3 (2d Cir. 2004).